LOOMIS v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court, S. D. New York. October 14, 1899.)

RAILROAD BONDS—OPTION OF HOLDER TO EXCHANGE FOR STOCK—EXPIRATION.

A railroad company issued coupon bonds maturing in 30 years, to each of which was attached a certificate of "scrip preferred stock" equal in amount to the bond, and which, by a provision of the company's articles of association, and also of the bonds, the holder had the option of exchanging for an equal amount of the company's full-paid preferred stock at any time within 10 days after a dividend on such stock had been declared and had become payable, on delivery to the company of the accompanying bond and unmatured coupons and surrender of the certificate. *Held*, that such option did not extend beyond the time when the bonds matured, at which time the liability of the company for their payment and the obligation of the holder to receive such payment became absolute.

This was an action to recover damages for breach of a contract contained in bonds issued by defendant giving the holder an option to exchange them for an equal amount of defendant's preferred stock. On motion by defendant for a new trial.

Wheeler H. Peckham, for the motion.
Howard Van Sinderen, opposed.

WALLACE, Circuit Judge. The plaintiff became owner, before maturity, and for a valuable consideration, of eight bonds made by

the defendant, dated July 1, 1867, for the payment of $1,000 each, part of an issue of $4,000,000, and known as "First Mortgage Seven Per Cent. Convertible Bonds." The bonds were payable on the 1st day of July, 1897, with interest semiannually at the rate of 7 per cent. per annum on the 1st day of January and July in each year upon the presentation and surrender of the coupons annexed. Annexed to and accompanying each bond was a certificate for 10 shares of the capital stock of the defendant, known as "Scrip Preferred Stock." The articles of association of the defendant contained the following provision:

"Our capital stock shall not exceed, except as hereinafter provided, $4,200,-000, divided into 42,000 shares, which said shares shall be subdivided as follows: An amount not exceeding $3,450,000, or 34,500 shares, shall be set apart and designated as 'Preferred Stock,' and the full sum of $100 per share we hereby declare and acknowledge to be paid thereon, except on so much of this class as is hereinafter designated as 'Scrip Preferred Stock'; and on this scrip stock we hereby declare and acknowledge the sum of one dollar per share to be paid. Of $3,450,000 preferred stock, an amount not exceeding $2,200,000 at par, or 22,000 shares, shall be set apart and designated as 'Scrip Preferred Stock.' The scrip preferred stock here named or hereafter named shall not at any time exceed the amount of outstanding mortgage bonds hereinafter named. The scrip preferred stock shall not be subject to any assessment, and shall entitle the holder in whose name it stands upon our books to all the rights and privileges of other stockholders, except that it shall not entitle the holder to any dividend or other profit or increase from the income or assets of this company. It shall be issued in certificates of five and ten shares each, and shall accompany each mortgage bond of the company. The holder thereof shall have the right, at any time within ten days after any dividend shall have been declared and become payable on the preferred stock, to make the scrip preferred stock attached to his bond full-paid stock upon the surrender to the company of the mortgage bond named by its number in his scrip certificate, and upon surrendering said scrip certificate and bond he shall be entitled to receive therefor the same number of shares of preferred full-paid stock, and entitled to dividends."

The bonds contained the following covenant:

"The obligors also agree to transfer to the bearer, at his option, ten shares of one hundred dollars each of its preferred stock at any time within ten days after any dividends shall have been declared and become payable on said preferred stock, upon delivery in the city of New York of this bond and the unmatured coupons, and upon the transfer to the obligors of the ten shares of scrip stock accompanying this bond."

For many years the defendant had regularly paid dividends on the preferred stock. At the date of the maturity of the bonds it was ready to pay the amount due thereon of principal and interest at the place of presentation. A dividend on the preferred stock having been paid by the defendant October 21, 1897, the plaintiff, on October 22, 1897, duly presented his bonds and scrip-stock certificates at the office of the company for conversion into preferred stock, and duly demanded the preferred stock. The market value of the preferred stock was at that time $140 per share. The demand was refused, and he has kept his tender good. Upon these facts a verdict was ordered for the plaintiff upon the trial, and the question of the law involved was reserved for further consideration upon a motion for a new trial.

The question in the case is whether it is the meaning of the contract embodied in the bonds that the holders shall be permitted to

exercise the option of conversion after the maturity of the bonds. If that were its meaning, they would be at liberty to decline receiving payment of their bonds at maturity, and at any future time insist upon converting them into stock; and this would impose upon the defendant the burden of retaining indefinitely stock which it might otherwise convert into money, and of keeping funds constantly on hand sufficient for the payment of the bonds. Such a contract would be so disadvantageous to a promisor that it cannot be supposed to have been contemplated by the parties, in the absence of language clearly manifesting such an understanding. It is said to be found here because of the words "at any time." But the contract does not read that the promisor will transfer to the bearer "at his option, at any time, ten shares," as the words "at any time" refer to any time within the 10 days after the declaration of a dividend. The inquiry whether the dividend is not one to be declared during the life of the principal obligation, before the date of the maturity of the bonds, remains unsolved. The primary obligation of the contract is the undertaking for the payment of the principal and interest specified, the whole being payable at the expiration of 30 years from the date of the instrument. The optional conversion covenant is an accessory of that obligation. The promise of the defendant to pay the bonds at a specified time implies a reciprocal engagement on the part of the holders to accept payment on that date. It implies the existence of the right to tender payment and extinguish the primary obligation. It seems quite inconsistent with that implication that the option is to survive, and be exercised at a subsequent period. The provision for surrendering the unmatured coupons with the bonds as a condition of the conversion also suggests that the option is to be exercised before all the coupons have matured. Reading the whole instrument together, the fair interpretation is that the option may be exercised at any time before the promisor is at liberty to pay off the bonds,— while there are unmatured coupons,—and that thereafter its obligation is satisfied by paying the bonds.

At all times after the maturity of the bonds the measure of the defendant's liability is the amount due of the principal and interest upon them. After the extent of its liability became fixed, it could not thereafter be enlarged by any act of the plaintiff, and the right of election was gone.

The motion for a new trial is granted.